IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| DAVID LOWERY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:13-cv-00060 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | By: Hon. Jackson L. Kiser |
| Commissioner of Social Security, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Before me is the Report and Recommendation ("R&R") of the United States Magistrate Judge recommending that I grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and affirm the final decision of the Commissioner. The R&R was filed on December 1, 2014, and Plaintiff David W. Lowery ("Plaintiff") filed objections on December 15. The Commissioner did not respond in any fashion, and the matter is now ripe for review. See Fed. R. Civ. P. 72(b). After careful review and consideration, and for the reasons stated below, I will overrule Plaintiff's objection, adopt the R&R of the Honorable Joel C. Hoppe, grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and affirm the final decision of the Commissioner.

## I.      STATEMENT OF FACTS AND PROCEDURAL HISTORY

On July 29, 2011, Plaintiff filed an application for a period of disability insurance benefits pursuant to Title II of the Social Security Act ("the Act"), and supplemental security income pursuant to Title XVI.[1] See 42 U.S.C. §§ 401–433, 1395−1395ccc. (See R. 250–273.) In his application, Plaintiff alleged that he had been disabled since June 15, 2004, due to a

---

[1] Plaintiff withdrew his Title II application at his November 20, 2012, hearing. See R. 14, 37.

- 1 -

combination of: HIV; Hepatitis C virus; chronic heart condition; hypertension; chronic obstructive pulmonary disease; sleep apnea; peripheral artery disease; bipolar disorder; chronic depression; and "non-operable closed end heart arteries." (R. 287.) The Commissioner denied Plaintiff's claims initially on September 21, 2011, and again upon reconsideration on April 6, 2012. (See R. 103–166.)

On November 20, 2012, Plaintiff appeared with his attorney before Administrative Law Judge Brian Kilbane ("the ALJ"). (R. 14.) Plaintiff and vocational expert Barry Hensley both testified at the hearing. (R. 37–56.) In a written decision dated December 21, 2012, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. (See generally R. 14–28.) He found that Plaintiff has "HIV, coronary artery disease, chronic liver disease, hepatitis, arthritis, cervical spondylosis[,] and sleep apnea." (R. 17 (citing 20 C.F.R. § 416.920(c)).) ALJ Kilbane found that Plaintiff did not have an impairment or combination or impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19 (citing 20 C.F.R. §§ 416.920(d), 416.925, and 416.926).)

After consideration of the entire Record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a limited range of light work. (R. 20). Specifically, the ALJ determined that Plaintiff "can only occasionally lift and carry 20 pounds, can frequently lift and carry 10 pounds, can stand and walk with normal breaks for a total of 6 hours out of an 8 hour workday, can sit with normal breaks for a total of more than 6 hours on a sustained basis out of an 8 hour workday, can perform occasional climbing of ramps and stairs and ladders/ropes/scaffolds and can perform frequent stooping, kneeling, crouching and crawling." (Id.) Although the ALJ determined that Plaintiff was not capable of performing past relevant work, he did conclude, "there are jobs in the national economy that the claimant can perform."

(R. 26 (citing 20 C.F.R. §§ 416.969, 416.969(a).) Accordingly, he concluded that Plaintiff was not disabled within the meaning of the Act. (R. 27.) The Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner on September 13, 2013. (R. 1–4.)

On October 7, 2013, Plaintiff filed suit in this Court to challenge the final decision of the Commissioner. (Compl. [ECF No. 3].) Pursuant to 28 U.S.C. § 636(b)(1)(B), I referred the case to the United States Magistrate Judge for consideration. Plaintiff and the Commissioner filed cross-motions for summary judgment. (Pl.'s Mot. Summ. J., March 28, 2014 [ECF No. 12]; Def.'s Mot. Summ. J., April 30, 2014 [ECF No. 15].) On December 1, 2014, Judge Hoppe filed his Report and Recommendation, recommending that I affirm the final decision of the Commissioner. (R&R, Dec, 1, 2014 [ECF No.17].) On December 15, 2014, Plaintiff filed an objection to the R&R. (Pl.'s Obj., Dec, 15, 2014 [ECF No. 18] [hereinafter "Pl.'s Obj."].) The Commissioner did not respond, and the matter is now ripe for review.

## II.    STANDARD OF REVIEW

Congress has limited the judicial review I may exercise over decisions of the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. See 42 U.S.C. § 405(g) (2014); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but

less than a preponderance of the evidence.  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant.  20 C.F.R. §§ 404.1527–404.1545 (2014); see Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (noting that it is the role of the ALJ, not the vocational expert, to determine disability).  The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence.  20 C.F.R. §§ 404.1527, 416.927 (2014).  Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner.  See id. §§ 404.1527(e), 416.927(e); Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987).  If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision.  Laws, 368 F.2d at 642.  In reviewing the evidence, I must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary.[2]"  Mastro, 270 F.3d at 176 (quoting Craig, 76 F.3d at 589).

### III.    DISCUSSION

Plaintiff's only objection to Magistrate Judge Hoppe's R&R is that "[t]he ALJ's reliance on the consulting, non-examining DDS doctor's opinion is irrational and not supported by evidence in the record . . . ."  (Pl.'s Obj. pg. 4.)  In essence, Plaintiff objects because the ALJ relied on—and sided with—the opinions of the admittedly consultative examiners over his treating physicians.

---

[2] Or the secretary's designate, the ALJ.  See Craig, 76 F.3d at 589 (quoting Walker, 834 F.2d at 640).

Case 4:13-cv-00060-JLK-JCH   Document 19   Filed 04/20/15   Page 4 of 8   Pageid#: 1115

Generally speaking, treating sources are given controlling weight "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 416.927(c)(2) (2014). While a treating physician's opinion is typically afforded controlling weight, that rule is not sacrosanct. In evaluating medical opinions, an ALJ should examine "(1) whether the physician examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). An ALJ, however, "may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

Here, Plaintiff's treating physicians opined that Plaintiff had significant limitations. Both Dr. Iskander and Dr. Sloop opined that Plaintiff would be unable to maintain full-time employment because of his physical (and, in the case of Dr. Sloop, mental) conditions. (See 847–49; 942–43.) In contrast, Dr. Cader, a non-examining DDS physician, opined that Plaintiff *was* capable of performing the full range of light work. (See R. 148.) In making this determination, Dr. Cader stated that Dr. Iskander's "opinion is without substantial support from other evidence of record, which renders it less persuasive." (Id.)

The ALJ rejected Dr. Iskander's opinion because his conclusory statement regarding Plaintiff's functioning was inconsistent with Dr. Iskander's own diagnoses. Specifically, although Dr. Iskander stated that Plaintiff "has marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or angina discomfort on ordinary physical

- 5 -

activity" (R. 938), the ALJ concluded that opinion was inconsistent with his finding that Plaintiff's coronary artery disease "falls within New York Heart Association Class I-II, which signifies that the claimant has no limitation in ordinary physical activity or only mild symptoms and slight limitation during normal activity" (R. 24). Dr. Iskander himself recognized this inconsistency, noting that Plaintiff's "congestive heart failure is not his limiting factor from the cardiovascular standpoint." (R. 942.) Rather, he concluded that Plaintiff's shortness of breath "is mostly related to the patient['s] continuous smoking habits as well as possible chronic obstructive pulmonary disease." (Id.) "*[I]f true*," he concluded, the COPD "is monitored by his primary care physician." (R. 942–43 (emphasis added).)

Here, it is apparent that Dr. Iskander's opinions were not based on his own diagnoses, but rather on an assumed diagnosis under the presumed care of another physician. When coupled with the fact Dr. Iskander's opinion was, in fact, two years old at the time, and that more recent physical examinations showed "normal findings" (R. 24–25; see also R. 678), I cannot say that the ALJ was wrong to devalue significantly Dr. Iskander's opinions regarding Plaintiff's level of functioning.

With regard to Dr. Sloop's opinion, the regulations state that, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the ALJ] will give that opinion." 20 C.F.R. § 416.927(c)(3) (2014). Dr. Sloop's opinion of Plaintiff's level of functioning appeared to be based solely on Plaintiff's subjective complaints. Dr. Sloop—who is a psychologist—did not perform a physical examination of Plaintiff (see R. 25, 848), and his conclusions regarding Plaintiff's compromised ability to attend work regularly do not appear to have any basis other

- 6 -

than Plaintiff's own self-reporting (see, e.g., id. at 849). On this record, the ALJ was justified in discounting Dr. Sloop's opinions that were outside his area of expertise and which lacked any objective medical testing.

More than the decision to reject Drs. Iskander and Sloop's opinion, however, Plaintiff objects to the ALJ's reliance on Dr. Cader's opinion. In his objection, he contends that, "Dr. Cader did not have a full set of accurate reports to make a rational decision. Another DDS physician indicated the day after Dr. Cader's opinion that the evidence was not sufficient to make a decision. . . . Further complicated is the fact that another's [*sic*] person's records were entered into this medical record." (Pl.'s Obj. pg. 5.) First, Plaintiff does not indicate which medical evidence was allegedly missing from Dr. Cader's evaluation, much less whether the evidence was so persuasive that it would have changed the ALJ's overall conclusion. Second, unanimity of opinions is not required for the ALJ to rely on Dr. Cader's opinion; all that is necessary is that Dr. Cader's opinion be "consistent with the record." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). Here, it was. (Compare R. 283 (noting Plaintiff's self-reported ability to lift 10-20 pounds briefly), with R. 147 (limiting Plaintiff to occasionally lifting or carrying 20 pounds and frequently lifting or carrying 10 pounds).) Finally, it appears from the Record that the "other person's" medical records only became attached to Plaintiff's updated records *after* Dr. Cader expressed his opinions. Dr. Cader's report is dated December 28, 2011 (R. 150), and the records to which Plaintiff refers were submitted on January 27, 2012 (see R. 816–826.) Thus, nothing in the Record indicates that Dr. Cader reviewed, let alone relied on, another patient's medical records in reaching his conclusions. On the Record before me, I cannot take issue with the ALJ's decision to accept Dr. Cader's opinion, and Plaintiff's objection will be overruled.

## IV.    CONCLUSION

On this Record, there is substantial evidence to support the ALJ's decision to discount the opinions of Plaintiff's treating physicians.  Likewise, because Dr. Cader's opinion is consistent with the Record, the ALJ was justified in accepting Dr. Cader's opinions regarding Plaintiff's level of functioning.  I have reviewed those portions of the Record to which Plaintiff has made specific objections, and those objections will be overruled.  I have reviewed the remainder of the Record for clear error and, finding none, I will affirm the ALJ's final decision.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record as well as to Magistrate Judge Hoppe.

ENTERED this 20th day of April, 2015.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE